## MERAGER V. MADSON *et al.*

1. Where, in a suit to foreclose a mortgage, the only evidence offered by plaintiff was a purported assignment of the mortgage from the ostens-ible mortgagee, and the evidence introduced by defendant, which was uncontradicted, showed a disavowance of ownership of the mortgage by plaintiff's assignor, and further showed that defendant had at all times been in possession of the note and mortgage, a finding that plaintiff had failed to establish her ownership of the mortgage and right to re-cover was justified.

2. On appeal from a judgment dismissing the complaint, which was author-ized by competent and uncontroverted evidence, it would be presumed that the trial court disregarded incompetent evidence introduced by defendants, and based its conclusion on the competent evidence.

3. In a suit to foreclose a mortgage, title to which is claimed by one of the defendants, plaintiff cannot complain of a judgment of dismissal, where she fails to establish her title to the mortgage, although the title of defendant is also doubtful.

(Opinion filed May 31, 1905.)

Appeal from circuit court, Minnehaha county; Hon. JOSEPH W. JONES, Judge.

Action by Florence Merager against Bertha K. Madson and others. From a judgment dismissing the complaint on its

merits and denying a motion for a new trial, plaintiff appeals. Affirmed.

*Joe Kirby*, for appellant.

*D. D. Holdridge & Son* and *T. B. McMartin*, for respondents.

FULLER, J. At the trial of this action to enforce collection of a promissory note by foreclosing a mortgage given to secure the same, the only evidence offered to sustain the issues on the part of the plaintiff was the following duly acknowledged and recorded instrument: "For and in consideration of Two Hundred and Fifty dollars to me in hand paid, Dr. O. S. Merager does hereby assign unto Florence E. Merager of Sioux Falls P. O., S. D., a certain indenture of mortgage and the notes secured thereby, executed by Bertha K. Madson and Martin I. Madson to Dr. O. S. Merager, on this 11th day of September, A. D. 1899, upon Lot 6 in Block 7 in the village of Oldham, Kingsbury Co., S. D , and recorded in Book 40 of mortgages on page 444, in the office of the register of deeds, Kingsbury county, South Dakota, on the 15th day of Sept., 1899, at 8 o'clock, A. M. Dated this 31st day of May, A. D. 1902. Dr. O. S. Merager." The defendant T. C. Murphy, as grantee of the mortgagors, having deposited in court ample funds to satisfy the entire amount claimed, plaintiff was entitled to recover such sum by proving that she owned the note and mortgage. At the conclusion of all the evidence the complaint was dismissed on its merits in favor of the defendant Sarah Merager, and plaintiff prosecutes this appeal from the judgment accordingly entered and from an order overruling her motion for a new trial.

When the note and mortgage were taken in his name, Dr.

O. S. Merager was the husband of the respondent Sarah Merager, who afterward obtained a divorce, and prior to executing the foregoing assignment he intermarried with the appellant, Florence, and subsequently departed this life. Without objection respondents introduced in evidence the mortgage and note, contanting several indorsements of interest received by her from the mortgagors, and proved by competent testimony that such instruments were given to secure the payment of a loan of money belonging to her father, James Carpenter, and that appellant's purported assignor, Dr. O. S. Merager, never had possession thereof, nor any interest therein, but procured the same to be executed in his name under the following circumstances, as shown by the testimony of one of the mortgagors, fully corroborated by other competent witnesses: "The money represented in the transaction was paid to me at the Bank of Oldham. Mr. Maxam was present at the time. Q. Did you have any talk with O. S. Merager at the time of making the loan? A. We did not have any talk just then about it. All the talk we had was that the money was at the bank with the papers. The way it happened, when he, O. S. Merager, went down to Minnesota, I asked him if he could find some one there who had some money to loan. He said he would try, and when he came back he said his father-in-law had some money I could get at 7 per cent. I agreed to take it. Then afterwards he told me the money was here, and I could get it. By father-in-law I mean the father of the defendant Sarah Merager, who was the doctor's wife at that time. I made several payments on this note, one at their home and some at the bank. The first indorsement on the note is in the handwriting of Hattie Merager, the oldest daughter of the doctor and Sarah

Merager; the others, not sure.   Q. If you had any talk with Dr. Merager concerning the payment of the interest, state it fully, time and place.   A. The time I went in Dr. Merager's office here in Oldham and told him I wanted to pay the interest on the note, he told me to go to the house and pay it; that he wanted nothing to do with it; that his wife could attend to that. I paid it to Mrs. Merager in the fall of 1900.   The doctor and Mrs. Merager were then living together as man and wife. Q. Did the doctor give any reason why the money should be paid to her?   A. He said he had nothing to do with it.   Q. State what the doctor said as to from whom the money was coming.   A. From his father-in-law."   Mr. A. B. Maxam, the banker through whom the transaction was consummated, testified as follows:   "A. Dr. Merager brought a cashier's check, drawn by the Bank of Cannon Falls, payable to Jas. Carpenter, dated August 25th, for the amount of $500.  This check was indorsed by Mr. Carpenter in blank.   My recollection of the use of the money was that a part of the same was used to make a loan to Bertha Madson.   On September 13, 1899, Dr Merager was credited with $250.   This credit was a part of the cashier's check that he cashed.   I knew Dr. Merager very well then. My recollection is that Dr. Merager very seldom had a credit with the bank.   I believe that nearly all the credits to Dr. O. S. Merager and Mrs. Sarah Merager from the Bank of Oldham were part or all the proceeds of the checks cashed drawn to James Carpenter.   I have been informed that James Carpenter was father of Mrs. Sarah Merager.   Q. The money that you paid out was after consultation with her, was it not?   A. Not necessarily; only as to her account.   My recollection of the matter is that Dr. Merager took enough of the money or pro-

ceeds of the draft or check to make the Madson loan on the day he cashed it. I believe that was customary on making several loans that were made. In regard to making these loans and transactions, I do not think I talked to any one except Dr. O. S. Merager. My recollection of the matter is that Dr. Merager told me that his father-in-law, James Carpenter, had some money, and that they would like to make some good loans and asked me if I knew of such loans. Making loans on town properties in Oldham at that time was not very easy. I do not recollect, or have no more vivid recollection of, this loan than of the others. I do not remember to have talked with them (Dr. O. S. Merager and Mrs. Sarah Merager) regarding it. I have no recollection of having any particular conversation with Dr. or Mrs. Merager regarding the Madson loan, only as I have stated before. I believe Dr. Merager to have mentioned the matter of making the Madson loan at the time he cashed the check. At that time Dr. Merager and Sarah Merager were then living together as man and wife, in Oldham, and had done so as long as I knew them." In view of the foregoing uncontroverted testimony showing the disavowance of ownership on the part of Dr. O. S. Merager, and the further fact that respondent has been at all times in actual possession of the note and mortgage, the finding that appellant failed to establish her claim of ownership and right to recover is clearly justified. The assignments of error relied upon for a reversal in appellant's brief all relate to the improper admission of the testimony of respondent Sarah Merager with reference to transactions between such witness and her husband, since deceased, which tend to show that the loan was made by her father exclusively for her use and benefit. As-

suming, without deciding, that her testimony ought to have been excluded, it will be presumed that the trial court wholly disregarded the same, and based its conclusion upon the foregoing competent and uncontroverted evidence.    Yankton B. & L. Association v. Dowling et al., 10 S. D. 540, 74 N. W. 438; Fowler et al. v. Iowa Land Co., Limited, et al., 18 S. D. 131, 99 N. W. 1095; Easton v. Cranmer, 19 S. D. 224, 102 N. W. 944. By eliminating all of such testimony, respondent's ownership and right to recover the entire amount claimed may be somewhat doubtful; but appellant must rely upon the strength of her own title, rather than the weakness of that of her adversary, and, having failed to establish a cause of action by a fair preponderance of the evidence, she is in no position to complain.

The judgment appealed from is affirmed.